Jasen, J. (dissenting).
I dissent and vote to affirm the order of the Appellate Division. To be sure, the investigatory stop of the defendant may not have been based upon sufficient suspicion to authorize a search of his person. But he was not searched nor does defendant seek to suppress any contraband discovered as a fruit of the arguably illegal stop. Instead, defendant moves to suppress a .32 caliber revolver which the *963 police, lawfully positioned on the sidewalk, observed to be on the floor of defendant’s rented automobile. Quite apart from the stop, the police were lawfully on the public sidewalk and the gun was properly seized because this dangerous weapon was out in plain view, for the world to see. (People v Lemmons, 40 NY2d 505.) Of course, it was night and the officers used a flashlight to illuminate the interior of the car. However, it is well-settled law that shining a flashlight into the interior of a parked vehicle is not an unreasonable search. (E.g., People v Cruz, 34 NY2d 362, 370; People v Miller, 52 AD2d 425, 428-429; People v Howell, 78 Misc 2d 538, 540, affd 51 AD2d 1105.) The majority’s statement to the contrary, made without citation to any authority, overlooks established decisional law. Aside from the fact that there is controlling authority on the issue, there is no basis for concluding that the use of a flashlight was an unwarranted intrusion into the vehicle. As Mr. Justice Silverman, writing for a unanimous Appellate Division, has cogently stated, "[o]f course it is an elementary fact that all objects which are not themselves a source of light are seen because a light shines on them and is reflected from them. If this incident had happened in the daytime and the officer had seen the gun by daylight, it could not be argued that this was a search, or if the officer saw the gun by the reflected light of a street light, or the headlights of a passing car, this would not constitute a search. What the officer did when he shone his flashlight into the car was to furnish the light which would otherwise have come from daylight, street light or the lights of a passing car. While a flashlight held in the hands of a police officer and purposely shined upon someone is doubtless more annoying and in that sense [more] intrusive than indiscriminate daylight, street light or passing headlights, I do not think this should be held to constitute a search within the meaning of the Fourth Amendment.” (People v Miller, 52 AD2d 425, 428-429, supra.) In short, by using the flashlight, the officer only substituted artificial light for that, which in daytime, would have been supplied naturally by the sun.
It is a well-recognized, fundamental, and traditional police practice to shine lights into dark places, including hallways, closed stores, areaways, under stairs and stoops, around trees and bushes, and, most relevant here, parked automobiles. Such reasonable conduct by police personnel on night patrol in a large metropolitan area is essential for the protection of *964 the public and of the officers themselves. The dark of night may shield illegal conduct brightly visible in day. As in this case, a parked car with a revolver in open view would be observed, and reported, by any passerby during the day. At night, the presence of a dangerous weapon in a populated area is hidden by the cloak of darkness. It is true that legitimate expectations of privacy would preclude police, even standing on a public street, from shining a flashlight through the window of a private residence. However, in this case, defendant left his automobile parked on a public street and scarcely could have expected that the contents would remain fully secure from public view. The majority’s decision to implicitly overrule the well-established searchlight cases strikes a hard and unfair blow at legitimate and reasonable police conduct.
The majority’s reliance on People v Allende (39 NY2d 474) is misplaced. In Allende we held that officers had seized the occupants of a parked vehicle, whose motor was running, by approaching the car with drawn guns. The majority concedes, in its memorandum, that no guns were drawn by the officers in this case. The most critical fact in Allende—the drawn guns—is totally absent from this case. In the Miller case, the court pointedly stated the controlling, and vital, distinction. The situations in cases like Allende, it wrote, are "very far from the present situation where appellant was neither prevented from doing anything he wanted to do nor directed to do anything nor was his car stopped or blocked by the police until after the police officer had seen the gun. Thus [we] think there was no 'seizure.’ ” (52 AD2d, at p 428.) Here, no guns were drawn, nor was the car stopped, nor was the defendant prevented from driving it away. Nor was there a search. As in Miller, "the police officer did not reach into the car, did not open a door or window, did not lay his hand on the car or on the door until he saw the gun; he merely flashed a light through the window of the car and then saw the gun.” (52 AD2d, at p 428.)
To conclude, it is my view that the conduct of the police officers was proper and reasonable under the circumstances. Both controlling decisional law and common sense dictate affirmance of the Appellate Division. The contrary conclusion reached by the majority is unfortunate. I dissent.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur in memorandum; Judge *965 Jasen dissents and votes to affirm in a separate opinion. Order reversed, etc.