■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JAMES KEY, Respondent. — Order, Supreme Court, New York County, entered on April 8, 1980, reversed, on the law, the motion for suppression denied and the case remanded for trial. All concur except Kupferman, J. P., and Birns, J., who concur in a memorandum by Birns, J., and Sandler, J., who concurs in a separate memorandum, and Carro and Fein, JJ., who each dissent in separate memoranda, all as follows.

Birns, J. (concurring). On December 28, 1979 police officers on radio patrol observed an automobile parked on Amsterdam Avenue near 117th Street in Manhattan. Defendant, alone in the vehicle, was slumped over the steering wheel apparently asleep or unconscious. The blinker lights were on and the key was in the ignition. The motor was not running. The officers stopped their vehicle and one of them knocked on defendant's rolled-up window, awakening him. Defendant rolled down the window. The officer testified that defendant proceeded to insult him. Defendant's movements were slow and his speech slurred. The officer told defendant to get out of the car and produce his license and registration. Defendant could not find them in his pockets or in the glove compartment. As defendant was alighting, a gun fell from the floor of the vehicle to the roadway. The police retrieved the weapon, containing some live rounds and several spent shells. Defendant admitted ownership of the weapon, for which he had no permit. Additional live rounds fitting the pistol were found in his coat pocket. At no time during the incident did the police have their guns drawn. The trial court was of the view that the police could approach the car to determine whether defendant was in need of assistance. We do not disagree, nor does defendant, with that conclusion. However, relying on *People v Ingle* (36 NY2d 413), and echoing the contention of defendant, the court suppressed the items seized, on the theory that the police were not justified in asking defendant to step out of the vehicle and produce his license and registration inasmuch as the officers had no basis to suspect that defendant was involved in criminal activity or violated the Vehicle and Traffic Law. While we accept the find-

ing of the trial court that there was no suspicion of criminal activity, we do not agree with the court's holding. We find that the police conduct was justified. The Vehicle and Traffic Law furnished a basis for the actions of the police. *People v Ingle (supra)* is not apposite. That case involved a "routine traffic check" of a vehicle arbitrarily selected on a public highway solely to examine the motorist's license and registration or inspect the vehicle for possible equipment violation. This case does not involve a "routine traffic check". It concerns, rather, the performance by the officers of a legitimate public service function *(People v De Bour,* 40 NY2d 210, 218) i.e., to determine whether defendant was in a condition to drive. In requesting defendant to leave the car and exhibit his license and registration, the officers were taking reasonable precautions to forestall the operation of the vehicle by one who may have been drinking (Vehicle and Traffic Law, § 1192). Although the motor was not running, the key was in the ignition and defendant was in the driver's seat. It would have taken only a flick of the wrist and a quick pump on the pedal for him to start the car and operate it while in a questionable physical condition. Defendant in fact had been drinking. When he stepped out of the automobile, the officers smelled liquor on defendant's breath. Defendant at the hearing admitted he had been drinking. Even under *Ingle (supra),* the action of the officers was valid. As the Court of Appeals stated in that case (p 420): "An actual violation of the Vehicle and Traffic Law need not be detectable * * * All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion' *(Terry v Ohio,* 392 US 1, 21)." Clearly, the officers' conduct was not the product of mere whim, caprice or idle curiosity, but rather based on specific and articulable facts — defendant slumped at the wheel, the blinker lights on, the key in the ignition and, when he was aroused, his movements slow and speech slurred. Once the police had legally approached the vehicle they could, in these circumstances, properly ask defendant to step out of the car and display his license and registration. The instrusion was, at most, *de minimus,* and not violative of defendant's Fourth Amendment rights *(Pennsylvania v Mimms,* 434 US 106, 111; see *People v Miller,* 52 AD2d 425, 429, affd 43 NY2d 789). The subsequent discovery of the weapon, which fell out of the car, was not the product of an intrusion into any area of protected privacy (cf. *People v Boodle,* 47 NY2d 398).

Sandler, J. (concurring). Consideration of the issues raised by this appeal is complicated by the coming together of two circumstances. The Assistant District Attorney presented the evidence at the hearing on the assumption, ultimately rejected by the hearing Judge, that the officer had not requested the defendant to leave his vehicle. Accordingly, the Assistant District Attorney did not elicit in a detailed systematic way evidence concerning the possible intoxication of the defendant, which evidence emerged in an incidental and piecemeal manner. In addition, the hearing Judge decided the case on the legal judgment, erroneous in my view, that once the police had satisfied themselves that the defendant was not sick or in trouble, no further police activity was appropriate since the vehicle was not in operation. Accordingly he did not address himself in his thoughtful opinion to the evidence concerning the defendant's apparent intoxication prior to being requested, as he found, to leave the car. Under these circumstances, it is surely appropriate for this court to exercise its power to make factual findings at least with regard to issues not determined by the hearing Judge

because of his different understanding of the legal problem. From the evidence as a whole, it is apparent that the police officers could have reasonably believed the defendant to have been intoxicated before requesting him to leave the car, assuming that such a request was in fact made. The defendant was observed sleeping over the steering wheel of a parked vehicle whose blinker lights were flashing. It was difficult to rouse him. When he was awakened, the defendant spoke abusively, and in a slurred manner, to the police. He had what the police could have considered unusual difficulty in locating the registration and driver's license. From these observations the police had a reasonable basis to believe that the defendant was intoxicated. Additionally, the police could reasonably have believed that the defendant had been driving the car in that condition, it surely being more likely that he had been driving the car before parking than that he had entered the car, put on the blinker lights, placed his key in the ignition, and then proceeded to go to sleep. That the police officer's testimony on these matters was credible is surely confirmed by the fact that the defendant thereafter testified that he had consumed four or five scotches, one of them in the car, had driven friends home, and that, feeling tired, he had gone to sleep. It is unnecessary to determine whether the evidence was sufficient to justify an arrest for driving while intoxicated. (See CPL 140.10, subd 1, par [b].) Assuming, *arguendo,* that the evidence was not sufficient to justify arrest, I would think it relatively free from doubt that the circumstances established reasonable suspicion of the commission of a crime sufficient to support police action pursuant to CPL 140.50 (subd 1). Nor does the failure of the police to testify explicitly to such a suspicion eliminate the obvious significance of the facts established in this record. A second ground for sustaining the police action, which derives from the public service function of police officers alluded to in the majority memorandum is even more compelling. The police observations suggested at least the possibility that the defendant was intoxicated. If that turned out to be the fact, and the police had left him in the car with the key in the engine, the police would have been subject to legitimate criticism if the defendant had thereafter driven the car, injuring either himself or others. It was important to determine the precise nature of the defendant's condition, and a request to step out of the car so that the police might observe him moving, standing and walking was appropriate to that end. If such observations confirmed that the defendant was intoxicated, it would have been the plain obligation of the police officers to encourage the defendant not to return to the vehicle and to give whatever assistance the defendant might have required under the circumstances.

Carro, J. (dissenting). I agree with Justice Fein that, under the facts as found by the hearing Judge, for which there was ample support in the record, there was an insufficient predicate for the officer to order the defendant to exit the vehicle and produce his license and registration.

Fein, J. (dissenting). Rejecting the findings of the suppression Justice, the majority has concluded that under the circumstances of this case, the officer had a right to order the driver out of his car and to produce his license and registration. In *Pennsylvania v Mimms* (434 US 106, 111, n 6), the Supreme Court very recently laid down the guide: "Contrary to the suggestion in the dissent of our Brother Stevens, post, at 122, we do not hold today that 'whenever an officer has an occasion to speak with the driver of a vehicle, he may also order the driver out of the car.' We hold only that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." In arriv-

ing at its conclusion the majority has overlooked several crucial findings of fact made by the suppression court. First, the court found as a fact that the defendant's vehicle was properly parked "a few inches from the curb". Thus, there was nothing in the position of the vehicle to indicate a traffic violation or to invite closer scrutiny. Second, the suppression court did not find that the defendant insulted the officer. The suppression court found "After a brief conversation, the Sergeant told the defendant to get out of the car and to produce his license and registration." The testimony in this respect is revealing. Officer Rodriguez testified: "Q: Please tell us what Sergeant Brown said and what the defendant said? * * * A: Remarks were thrown back and forth that — actually what the exact wording was, I don't remember, but something about 'black' something was stated to Sergeant Brown, at which time Sergeant Brown then asked the defendant to produce his license and registration. Q: Is Sergeant Brown black? A: Yes he is". This is the sole testimony as to the basis for requiring the defendant to produce his license and registration. It is noted that this was the testimony of Officer Rodriguez. The People did not call Sergeant Brown as a witness. The defendant denied he made any such remark. As noted, the suppression Judge made no finding that there was any insult. I do not believe that it is the law that an officer has the right, solely on the basis of an insult or the use of a racial epithet, to require the driver of a vehicle to produce his license and registration. If police action is ever warranted on the basis of this kind of provocation, such action is entirely unrelated to whether the driver has a license and registration and provides no basis for requiring the driver to alight from the vehicle. Officer Rodriguez went on to testify that the defendant emerged from the vehicle voluntarily while in the process of trying to find his documents. The defendant testified, "The Sergeant told me to get out of the car and give him my license and registration." The suppression Judge credited the defendant's testimony that he alighted from the vehicle upon police request rather than on his own initiative. The record is clear that there was no traffic violation or suspicion of any other criminal activity, past, present or impending. Officer Rodriguez testified that there was no traffic violation. "Q: There was no traffic violation; right? A: No." Officer Rodriguez further testified: "Q: And up to that point, the defendant had not violated any law; right? A: No." Justice Birns concludes: "In requesting defendant to leave the car and exhibit his license and registration, the officers were taking reasonable precautions to forestall the operation of the vehicle by one who may have been drinking". Justice Sandler makes a similar finding as to defendant's "apparent intoxication". The difficulty with such conclusion is that there is no such testimony by the officers and it is contrary to the findings of the suppression court, which heard the testimony. Officer Rodriguez testified in connection with an inquiry as to defendant's condition: "Q: And could you describe the defendant's condition at that time? Mr. Rosenberg: At what time, your Honor? Talking about when he is still in the car? Mr. Hirsch: When the defendant is still in the car. A: His condition? Q: Yes. The Court: Did you notice anything about him, about his behavior, his manner of speech? The Witness: Slow in movement, trying to produce what he had been requested to produce. The Court: What about his speech? Anything about that? The Witness: Slurrish, I would have to say. Q: How about after the defendant exited the car? * * * A: After he exited the car I smelled his breath. He had a smell of alcohol." Both of the majority's concurring opinions fasten upon this answer. However, for Fourth Amendment purposes, it is plain that we may not consider the evidence of defendant's condition observed after he emerged from the car. Our inquiry must

be directed to the evidence which conferred the right to require him to produce his license and registration and emerge from the vehicle, in the absence of any evidence of a traffic violation or articulable ground for suspicion of criminal activity. As to defendant's slow movements and slurrish speech, these are common manifestations of a person who has just been awakened, and certainly do not constitute evidence, on their own, of intoxication. In this context, *People v Ingle* (36 NY2d 413) is instructive. I agree with Justice Birns that unlike *Ingle,* this is not a "routine traffic check" case. However, if, as *Ingle* holds (p 414), the police cannot arbitrarily stop an automobile "because of the unusual but irrelevant appearance of the vehicle, solely to examine the motorist's license and registration", a fortiori the police cannot do the same with respect to a parked vehicle. The "stopping or detaining [of] a vehicle on an ordinary city street is [no] less intrusive than a roving-patrol stop on a major highway" *(Delaware v Prouse,* 440 US 648, 657). As *Prouse* further holds (p 663), "except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment." I respectfully suggest that Justice Birns' reliance on *People v Miller* (52 AD2d 425, 431, affd 43 NY2d 789) is misplaced. In *Miller* the vehicle was parked with a crowd of people around it. The police had a right to approach and inquire, as they did here. Before either officer got to the driver's side of the car, the driver voluntarily emerged. At that time one of the officers, shining his flashlight through the front window on the passenger's side, observed a black automatic pistol on the front seat, near the passenger, whereupon the officer properly directed the passenger out of the car. The issue was whether there was an unreasonable search or seizure. The direction to emerge from the car followed observation of the evidence of criminal activity. It is undisputed that in that case, as in ours, the circumstances were such that the police, observing unusual activity, had a right to inquire. In *Miller,* during the course of the inquiry, they observed the contraband sought to be suppressed. In our case, there is no such evidence. The smell of liquor was detected only after the unlawful order to emerge from the car had been given and complied with. There is no doubt that this case concerns the police in the proper performance of a legitimate public service function *(People v De Bour,* 40 NY2d 210, 218), the right to make a limited inquiry under unusual circumstances. The inquiry was limited, under the circumstances, to determining the condition of the defendant, the reasons why he was parked with the blinker lights on and the reason why he was slumped over the wheel. A satisfactory explanation having been given, the direction to emerge from the car and produce his license and registration was unwarranted. Accepting the suppression court's findings of fact, as we must, in the absence of evidence to the contrary, it is manifest that the police had no articulable reason to detain defendant by asking him to get out of the automobile. I find no basis for the suggestion, in the opinion by Justice Sandler, that the suppression Judge overlooked the evidence. There simply were no observed violations of law. Findings to the contrary are unsupported. There was nothing unlawful or suspicious about the fact that defendant was slumped behind the wheel of the parked vehicle. We are constantly being reminded by law enforcement and driver safety agencies not to mix driving and drinking. When there is a possibility that fatigue or drinking may interfere with the ability to drive, we are cautioned to pull

over to the side of the road and sleep it off. I take it that none of us intends that this implies an invitation to the police to order us out of our cars and to produce our licenses and registrations. While the police certainly have the right, indeed the obligation, to satisfy themselves as to the safety and welfare of a driver slumped over the wheel of a parked car, this does not give them the authority to demand license and registration from that individual, and certainly does not warrant a stand-up inquiry outside the car. *People v Engle* (74 AD2d 583) is very close on its facts. The defendant there was observed slumped over the wheel of a parked car. The officer tapped on the driver's window to get defendant's attention. Upon the defendant's failure to respond, the officer opened the door and reached in and shook defendant who had apparently been asleep. Defendant finally awoke and the officer asked him if anything was wrong. Defendant did not answer. The officer then noticed that defendant had a laceration over his eye and that blood had trickled down his face and onto his coat. The officer then requested defendant to step out of the car and again asked him if anything was wrong, to which defendant responded: "No, I'm all right. I'm all right." The officer then asked defendant for his license and registration. Defendant asserted that the car was his but that he did not have his license and registration with him. The officer told defendant he would therefore have to take him to the station house. Defendant turned and attempted to re-enter the vehicle. As the officer reached into the car to pull defendant out, the officer saw the muzzle of a gun protruding from under the armrest in the front seat. The officer seized the fully loaded gun, arrested defendant, gave him a pat-down, searched him and found a box of ammunition in the pocket of defendant's jacket. There, as here, the officer did not claim to have had a reasonable suspicion that defendant had been engaged in any form of criminal activity or had committed a traffic violation. Although the court held there was a right to ask the defendant to get out of the car when he failed to respond to questions concerning his well-being, "in the absence of a reasonable suspicion that the defendant was engaged in criminal activity, there was no basis upon which to detain him, require that he furnish a registration for the car or identify himself. It follows, then, that there was no predicate for defendant's arrest (see *People v Stokes*, 32 NY2d 202; *People v Schanbarger*, 24 NY2d 288) and, by the same token, the gun was not properly seized under the plain view doctrine because there was no justification for intrusion into the car (see *Coolidge v New Hampshire*, 403 US 443)." *(People v Engle,* 74 AD2d 583, 584, *supra.)* Here defendant appropriately responded to inquiry concerning his well-being. There was no basis either for the request to alight from his car or to furnish his license and registration. *People v Boodle* (62 AD2d 966, affd 47 NY2d 398, cert den 444 US 969) does not require a different conclusion. There the defendant, who had been unlawfully compelled to enter a police vehicle, voluntarily threw a pistol to the ground. It was held that his voluntary act attenuated any taint. Here, there was no voluntary act. The gun fell to the ground as defendant was complying with the unlawful instruction to emerge from his vehicle and furnish his license and registration. Justice Birns speculates, in view of the later discovery that defendant had been drinking, that "it would have taken only a flick of the wrist and a quick pump on the pedal for defendant, in that condition, to start the car and cause an accident." There is similar speculation in the opinion by Justice Sandler. The difficulty with such speculation is that there is no finding anywhere, nor even a suggestion in the police officer's testimony, that defendant was drunk. Moreover, whatever evidence there was which might support that conclusion was discovered only after

the unlawful direction had been complied with. Such evidence is not pertinent on the issue before us. It does not provide articulable and reasonable suspicion of a traffic violation or of criminal activity sufficient to warrant detention. The majority justifies the police directions as "reasonable precautions" to prevent a violation of section 1192 of the Vehicle and Traffic Law, concerned with the operation of a motor vehicle by one impaired by consumption of alcohol. Plainly defendant was not "operating" his automobile when the police intruded. He was properly parked at curbside, asleep behind the wheel, with the motor off. Even if defendant had been intoxicated, there was still no observable traffic violation. With the engine not running, the motor vehicle clearly was not in operation (cf. *Matter of Barquero v Melton,* 60 AD2d 687, 688; *Matter of Leonard v Melton,* 58 AD2d 669; *People v Marriott,* 37 AD2d 868; *Matter of Prudhomme v Hults,* 27 AD2d 234), nor was defendant observed even about to place the car in operation *(Matter of Tomasello v Tofany,* 32 AD2d 962, mot for lv to app den 25 NY2d 742). There was no evidence of any past, present or contemplated criminal violation warranting police intrusion pursuant to CPL 140.50 (subd 1). Nor was there evidence of an accident having taken place which might indicate recent illegal operation of the vehicle *(People v Blake,* 5 NY2d 118). In short, there is nothing in the Vehicle and Traffic Law which would justify the police in demanding production of license and registration by a person so far removed from the actual operation of a motor vehicle as this defendant. The suppression order should be affirmed.