OPINION OF THE COURT
Lorin M. Duckman, J.
The defendant, who was observed motionless behind the wheel of a car parked at the curb with its engine running, was arrested and charged with operating a motor vehicle while under the influence of alcohol in violation of Vehicle and Traffic Law § 1192 (2) and (3). The People subsequently filed and served a superseding information which retained the original charges and added two new charges of aggravated unlicensed operation of a motor vehicle in the third degree in violation of Vehicle and Traffic Law § 511 (1) and aggravated unlicensed *194 operation of a motor vehicle in the second degree in violation of Vehicle and Traffic Law § 511 (2) (a) (ii). -
The defendant moves to suppress statements made to law enforcement officials, an empty beer bottle found in the car and the results of the breathalyzer test.
HEARING
On June 15 and June 16, 1995, a combined Dunaway/ Johnson! HuntleyI Mapp hearing was held. Police Officer Marco Varela testified for the People. His testimony was somewhat straightforward and mostly credible. No witnesses testified on behalf of the defendant.
The intoxicated driver exam and the arresting officer’s IDTU report were introduced into evidence.
FINDINGS OF FACT
On March 12, 1995, Police Officer Marco Varela and his partner Officer Emérito were on Domestic Violence Radio Motor Patrol. At approximately 9:55 p.m., they were travelling southbound on Hendrix Street, a one-way street. While stopped at a light at the corner of Hendrix Street and Atlantic Avenue, Officer Varela observed a legally parked station wagon with its engine running. A person, whom he later identified as the defendant, was sitting in the driver’s seat. He appeared to be asleep or unconscious, slumped over the wheel, with his head leaning back. As he pulled the patrol car alongside the station wagon, the defendant did not acknowledge the presence of the police car.
Due to traffic congestion, Officer Varela could not stop the patrol car next to the defendant’s vehicle. He drove around the corner, returning approximately three minutes later, and pulled the patrol car alongside the defendant’s car. The defendant was still slumped back in the driver’s seat; the engine was running and exhaust was coming out of the car. The car lights were not on.
Believing that the person in the passenger seat might have been the victim of a robbery or just in need of aid, Officer Varela approached the driver’s side while Officer Emérito approached the passenger side. Officer Varela observed the key in the ignition. No outward signs of physical injury were observed.
Officer Varela tapped on the driver’s window a couple of times. There was no response. He banged harder on the window *195 a number of times until he got the defendant’s attention. He told the defendant to roll down the window. When the defendant finally noticed the officer, he couldn’t open the window.
After waiting for 20 seconds and without asking for defendant’s permission, Officer Varela opened the unlocked car door and was struck by the strong odor of alcohol. He asked the defendant to exit the vehicle, reached inside the vehicle, and turned the ignition key, shutting the engine off.
The two were standing approximately one foot apart. Officer Varela observed that the defendant’s face was flushed, he had watery eyes, his speech was slurred and he was unsteady on his feet. Officer Varela asked the defendant if he had anything to drink. The defendant told him that "he had a couple of shots. He was just waiting for . a friend named Tony to come back to drive the car. He wasn’t going to drive the car.”
Meanwhile, Officer Emérito looked through the window and saw a bottle in the back of the car behind the driver’s seat. Officer Emérito informed Officer Varela about the bottle’s existence. While standing outside the vehicle on the driver’s side, Officer Varela, using a flashlight, was able to see the bottle on the floor of the car behind the driver’s seat. He recovered the empty beer bottle.
At approximately 10:15 p.m., Officer Varela handcuffed the defendant and placed him under arrest. The defendant was transported to the 78th Precinct. At 11:00 p.m., Officer Varela read the defendant the Miranda warnings. The defendant consented to take the breathalyzer test. The breathalyzer test was administered by the IDTU Unit at 11:45 p.m. The defendant registered a .11% blood-alcohol content.
CONCLUSIONS OF LAW
Approaching an occupied stationary vehicle is a minimal intrusion which is not the equivalent of a stop. (See, People v Harrison, 57 NY2d 470 [1982].) This situation is analogous to approaching a citizen on the street to request information and therefore the courts use the same four-tiered analysis set forth in People v De Bour (40 NY2d 210, 223 [1976]) to justify the conduct of the police. (See, People v Ocasio, 85 NY2d 982 [1995]; People v Harrison, supra.)
Police Officer Varela’s observations, on two separate occasions, minutes apart, of the defendant sleeping in the driver’s seat of the car with his head tilted back against the seat and the engine running was sufficient to justify the initial approach *196 and inquiry to see if the defendant was the victim of a crime or just in need of aid. (See, People v De Bour, supra, at 223 [1976]; People v Jaime, 171 AD2d 884 [2d Dept 1991]; People v Heston, 152 AD2d 999 [4th Dept 1989], Iv denied 76 NY2d 858 [1990].)
When Officer Varela approached the vehicle, tapped and then banged on the window to get the defendant to roll it down, he was engaged in a public safety function making sure that the defendant was safe. The officer’s subsequent act of opening the unlocked door of the defendant’s car was justified under the "emergency doctrine.” (See, People v Mitchell, 39 NY2d 173 [1976], cert denied sub nom. Mitchell v New York, 426 US 953 [1976].)
The basic elements of the emergency doctrine are:
"(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.
"(2) The search must not be primarily motivated by intent to arrest and seize evidence.
"(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.” (See, People v Mitchell, supra, at 177-178.)
Officer Varela had a valid reason to believe that an emergency existed. The officer observed the defendant on two separate occasions, minutes apart, seated behind the wheel of a car, slumped back against the seat with its engine running. The defendant was either asleep or unconscious and did not respond to his tapping or banging on the window. After being roused, the defendant was unable to complete the simple task of rolling down a window as directed by Officer Varela.
The protection of the defendant’s life was the sole motivating factor for Officer Varela’s decision to open the door of the car. Officer Varela’s observations and his attempts to communicate with the defendant led him to believe that the defendant may be in need of aid. It became imperative that the door be opened to determine the defendant’s physical condition.
A direct relationship existed between Officer Varela’s act of opening the door and the emergency. Without opening the door, Officer Varela would have been unable to determine to what extent the defendant needed assistance. Moreover, Officer Varela limited his action to simply opening the door.
Officer Varela acted reasonably and responsibly when he directed the defendant to exit the car. The officer’s action *197 forestalled the operation of the vehicle by one who may have been drinking. The intrusion was, at most, de minimis, and not violative of defendant’s Fourth Amendment rights. (See, Pennsylvania v Mimms, 434 US 106, 111 [1977]; People v Key, 81 AD2d 805 [1st Dept 1981], appeal dismissed 54 NY2d 813 [1981].)
Once outside the vehicle, Officer Varela observed that the defendant bore the common indicia of intoxication. He then asked the defendant if he had been drinking. The defendant admitted he had a few shots of alcohol.
Up to this point, Officer Varela’s actions were akin to a temporary roadside detention for the purpose of investigating the defendant’s safety and well-being and was not custodial in nature. (See, e.g., People v McGreal, 190 AD2d 869 [2d Dept 1993]; People v Mathis, 136 AD2d 746 [2d Dept 1988], Iv denied 71 NY2d 899 [1988].) In the absence of custodial interrogation, the defendant was not entitled to Miranda warnings prior to being questioned. (See, Miranda v Arizona, 384 US 436 [1966]; People v Yukl, 25 NY2d 585 [1969].) His admission will not be suppressed.
Prior to placing the defendant under arrest, Officer Emérito told Officer Varela about seeing a beer bottle on the floor behind the driver’s seat. Officer Varela shined a flashlight, saw the bottle and retrieved it. Both officers were entitled to be where they were to make a reasonable inquiry of the defendant. (See, People v Williams, 205 AD2d 717 [2d Dept 1994].) The seizure of the beer bottle did not come as the result of a search. (See, People v Miller, 52 AD2d 425 [1st Dept 1976], affd 43 NY2d 789 [1977].) The use of a flashlight to illuminate what was otherwise in plain view is not an unreasonable intrusion. (See, People v Cruz, 34 NY2d 362 [1974], rearg granted 35 NY2d 708 [1974]; People v Smith, 157 AD2d 870 [2d Dept 1990].)
The crux of the matter before this court is whether the defendant, who was legally parked, asleep or unconscious behind the wheel of a car with the engine running, was engaged in the operation of a motor vehicle, while under the influence, within the meaning of Vehicle and Traffic Law § 1192 justifying his arrest.
The crime of operating a motor vehicle while under the influence of alcohol in violation of Vehicle and Traffic Law § 1192 (2), (3) requires that the vehicle be operated by a driver who is intoxicated. Operation may be established by direct evidence or circumstantial evidence. Whereas, here, the police officer did not actually see the car in motion, the proof of "operation” *198 must be based on circumstantial evidence. (See, e.g., People v Booden, 69 NY2d 185 [1987].)
Despite a long list of terms defined in Vehicle and Traffic Law §§ 100a-159, the term operate, as used in Vehicle and Traffic Law § 1192, has been left to the courts to define. The term "operates” is broader than the ordinary definition of driving. (See, Matter of Prudhomme v Hults, 27 AD2d 234, 236 [3d Dept 1967].)
"[A] person operates a motor vehicle when he begins to use the mechanism of the automobile for the purpose of putting the automobile in motion even though he does not move it.” (See, People v Marriot, 37 AD2d 868 [3d Dept 1971], citing Matter of Prudhomme v Hults, supra.)
The Pattern Jury Instruction for Vehicle and Traffic Law § 1192 is also instructive. It provides that "[operation of a motor vehicle is established upon proof beyond a reasonable doubt that the defendant had recently driven the vehicle or by such proof that he was seated at the wheel, with the motor running and with a present intention of placing the vehicle in operation.” (See, 3 CJI[NY] V&TL 1192 [1], [2], [3], at 2306.)
Clearly, these two definitions require more than sitting behind the wheel of a running automobile. Both definitions include a mental state requirement as part of the definition, that of intention to move the vehicle. (See, People v Dymond, 158 Misc 2d 677 [Greene County Ct 1993].)
In determining if a defendant sitting behind the wheel of an automobile has "operated” it, the test is not simply whether the engine is running or not running.
For example, in People v Saplin (122 AD2d 498 [3d Dept 1986], appeal denied 68 NY2d 817 [1986]), the defendant, who was asleep behind the wheel, was found in his car in a remote, unsettled area of Cortland County, parked in and blocking the southbound lanes of Routes 41 and 26. No alcoholic beverages were found in or around the car. The defendant told the officer that he was en route to Cortland. The Court found based on the location of the vehicle, the officer’s observation and the defendant’s admission that he operated the vehicle.
In People v Bryd (NYLJ, Mar. 26, 1992, at 31, col 2 [Grim Ct, Queens County]) the court denied the defendant’s motion to dismiss for facial insufficiency finding that the defendant operated the vehicle. The defendant, who exhibited the standard indicia of intoxication, was found behind the wheel of a vehicle located in the middle of the street with the key in the unengaged ignition.
*199 In People v Williams (161 Misc 2d 523 [Crim Ct, Kings County 1994]), the defendant’s motion to dismiss for facial insufficiency was denied. The defendant was found asleep behind the wheel of a stalled car in the middle of a busy intersection, with the keys in the ignition. The court held that the defendant operated the vehicle. Under these circumstances, the court explained that common sense negates the possibility that the car was initially parked in the middle of the street.
In People v Edwards (158 Misc 2d 615 [City Ct, Oswego County 1993]), the defendant was asleep in the driver’s seat of the car. The engine was not running. He did not even have the keys. While sleeping his foot came into contact with the clutch peddle causing the car to roll backwards and strike another vehicle. The court held that where an individual engages in conduct that was unintentional or at least could not be proved by direct testimony to be intentional, he did not operate the vehicle within the meaning of the statute. Thus, the mere movement of a car was not sufficient to constitute operation if the defendant’s intent was not to set the car in motion.
In none of the preceding cases was there evidence that the engine was running. More important than whether a car engine is running in determining if the defendant operated the car is where the car is located and whether there is proof that he recently moved the car in an intoxicated condition or intended to do so.
For example, in Matter of Prudhomme v Hults (supra), a motorist was discovered alone, slumped over the steering wheel of a car stopped on the center mall of the Thruway. The vehicle’s bright lights were on and the engine was running, though not in gear. A Thruway ticket indicated that the motorist entered the Thruway 71h miles back and a half hour before he was discovered. No alcoholic beverages were found in or near his car. The court held that the defendant operated the vehicle within the meaning of the statute.
In People v Marriot (supra), the defendant’s presence alone behind the wheel of the car in an intoxicated condition with the motor running on the shoulder of a highway in a remote area where the car had been parked with the engine off allowed the jury to draw the fair inference that the defendant had started the engine intending to go home. This constituted operation within the meaning of the statute.
In People v Collins (70 AD2d 986 [3d Dept 1979]), the defendant was found asleep slumped over the steering wheel of a car stopped in a private driveway with the motor running. The *200 police observed that the defendant smelled of alcohol, slurred his speech and fumbled for his identification papers. The Court held that there existed ample circumstantial evidence from which to infer that the defendant operated his vehicle on the highway while intoxicated.
In People v Dymond (supra), the defendant was behind the wheel of a car parked in a restaurant parking lot. The car’s dome light was on, the brake light was on and the engine was running.
The defendant moved to dismiss the indictment for insufficient Grand Jury instructions on the issue of operation. The court explained that a jury could have found the defendant to be operating the vehicle; however, the court held that the Grand Jury was erroneously instructed that, as a matter of law, keys in the ignition and the engine running constituted operation. No instruction was provided that operate includes an intention on the part of the defendant to move the car. Consequently, the prosecutor’s instruction rendered the defendant’s testimony before the Grand Jury, that he turned on the engine to supply heat and give shelter to himself and friend waiting for a ride, irrelevant.
In People v Domagala (123 Misc 757 [Erie County 1924]), the defendant was seated behind the wheel in a car parked at the curb of a street. The defendant started the motor six times. Every time he tried to put the car into gear it stalled. The court held that the defendant operated the vehicle.
Each of these cases compels a strong inference that the defendant drove his car to the place where he was found or was intending to drive away. A car does not usually end up parked with the engine running in the middle of a highway, on the shoulder in a remote area, in the middle of a busy intersection, or in someone else’s driveway without someone driving it there. Likewise, a driver of a car does not usually park the car in one of those locations simply to take a nap.
In contrast, when a driver of a legally parked car starts the engine of his car, without an intention to set the car in motion, operation of a motor vehicle has not occurred. (See, e.g., People v O’Connor, 159 Misc 2d 1072 [Dist Ct, Nassau County 1994] [defendant behind steering wheel pumping the accelerator peddle for the purpose of helping the car’s owner, who was using a screwdriver, start the car]; People v DeSantis, NYLJ, May 21, 1990, at 32, col 4 [App Term, 9th & 10th Jud Dists] [defendant behind steering wheel started the engine for the purpose of heating the car].)
*201 Since none of the facts or circumstances in this case raises the inference that the defendant, who appeared to be in a stupor when observed by the officer, recently moved the car or intended to do so, it cannot be said that he operated the car, as a matter of law.
The breathalyzer results will be suppressed as the fruits of an illegal arrest. (See, Wong Sun v United States, 371 US 471 [1963].)
Accordingly, that portion of the defendant’s motion to suppress statements he made to law enforcement officials and an empty bottle of beer is denied.
That part of the defendant’s motion to suppress the breathalyzer test results is granted.