OPINION OF THE COURT
Stephen Rooney, J.
Defendant is charged with two counts of operating a motor vehicle while under the influence of alcohol in violation of Vehicle and Traffic Law § 1192 (2) and (3). On September 27, 1995 the court conducted a Dunaway/ Huntley hearing. For the reasons stated below defendant’s Dunaway motion is denied and his Huntley motion is denied in part and granted in part.
FINDINGS OF FACT
One witness testified at the hearing, Triboro Bridge and Tunnel Authority Officer Steven Morelia. The officer was a cred *848 ible witness. Officer Morelia has worked for the Triboro Bridge and Tunnel Authority at the Verrazzano Narrows Bridge on Staten Island for 10 years and during that time has made approximately 150 drunk driving arrests. On May 17, 1995, at about 20 minutes after midnight, Officer Morelia was stationed in toll booth number 22 at the bridge. He saw the defendant’s car approach the toll booth in an "unsteady and abrupt manner”. The vehicle was alternately being given gas, then braked, causing it to jerk back and forth. This happened several times as the car entered the toll lane. When the vehicle stopped at his booth, Officer Morelia asked the defendant if he was okay and if everything was all right. The defendant answered "fine”. Officer Morelia noticed that defendant’s eyes were bloodshot and watery. He asked the defendant to step out of his car. As the defendant exited the car, the officer detected a strong odor of alcohol on the defendant’s breath. He also noticed that defendant was unsteady on his feet. Officer Morelia asked the defendant if he had been drinking. The defendant said he’d had one beer, and after the officer replied that "nobody drinks just one beer” the defendant said he had had two or three beers. The defendant was then placed under arrest for driving while under the influence of alcohol. He was given his Miranda warnings, which he acknowledged, and was subsequently transported to the 120th Precinct. At the precinct a breathalyzer test was performed and the reading was twice the legal limit. Also at the precinct, the officer asked the defendant a series of questions from the PD 244 form, utilized in DWI cases. The officer could not remember if the defendant had requested an attorney prior to answering. In response to these questions, the defendant stated he had been driving, and that he was on his way home from a bar in Brooklyn, where he had five or six beers beginning at 10:30 p.m. The defendant denied any injury or illness, and also said he’d taken no drugs, medication or mouthwash.
CONCLUSIONS OF LAW
The threshold question presented is whether an officer, working in a toll booth, who sees a vehicle approach in an erratic manner and who sees that the driver’s eyes are bloodshot and watery, may ask the driver to step out of the vehicle. Under the facts and circumstances here, I find the answer to be in the affirmative.
An investigatory stop of a vehicle is permissible if based upon reasonable suspicion that a motorist is engaged in *849 conduct which is in violation of the law (People v Sobotker, 43 NY2d 559, 563 [1978]; People v Chilton, 69 NY2d 928 [1987]), including the commission of a traffic infraction. (People v Ingle, 36 NY2d 413, 420 [1975].) The factual basis required to support a stop of an automobile is minimal. In Ingle (supra), the Court of Appeals stated: "An actual violation of the Vehicle and Traffic Law need not be detectable * * * All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon 'specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant [the] intrusion’ (Terry v Ohio, 392 US 1, 21* * *).”
Here, while the defendant’s automobile had already stopped to pay the toll, the officer’s decision to prolong this encounter was tantamount to a police stop. While it may be that the erratic manner in which the defendant approached the toll booth was enough in itself to give Officer Morelia reasonable grounds to suspect defendant of driving while intoxicated (see, People v Wohlers, 138 AD2d 957 [4th Dept 1988]), the ensuing observation of defendant’s bloodshot, watery eyes provided this experienced officer with an additional specific and articulable fact upon which to base a reasonable suspicion of a Vehicle and Traffic Law § 1192 violation before defendant left the vehicle. Police action pursuant to CPL 140.50 (1) was thereby justified.
Once the officer had the factual predicate required to support the stop, he could properly ask defendant to step out of the car. Such an order was, at most, a de minimis intrusion into defendant’s privacy interests as protected by the Fourth Amendment. (Pennsylvania v Mimms, 434 US 106, 111; People v Livigni, 88 AD2d 386 [2d Dept 1982], affd 58 NY2d 894 [1983].)
The facts herein also justify an analysis of the officer’s request (that defendant leave the car) within the framework of the public service function of the police (People v De Bour, 40 NY2d 210, 218 [1976]). Officer Morelia did not initially pull the defendant over, as in the typical case. Rather, the defendant presented himself before the officer, driving erratically and with bloodshot and watery eyes. Before allowing defendant to pay his toll and continue on his way, it was incumbent upon the officer to determine the precise nature of his condition. This was necessary to prevent injury to defendant or to other citizens. Faced with this situation it was appropriate that the officer requested the defendant to step out of the car so that *850 further observations might be made. (People v Key, 81 AD2d 805, 806-807 [1st Dept 1981].)
As defendant left the car, Officer Morelia detected a strong odor of alcohol emanating from defendant. He also observed that defendant was unsteady on his feet. Upon inquiring, he learned that defendant had been drinking. Based upon all of his observations, both before and after defendant exited the car, the officer had probable cause to arrest defendant for operating a motor vehicle while under the influence of alcohol. (CPL 140.10 [1] [a]; Vehicle and Traffic Law § 1192.) The Dun-away aspect of defendant’s motion is, therefore, denied.
Temporary roadside detentions pursuant to routine traffic stops have been held to be noncustodial and reasonable initial interrogation attendant thereto has been held to be merely investigatory. (People v Mason, 157 AD2d 859 [2d Dept 1990]; People v Mathis, 136 AD2d 746 [2d Dept 1988].)
Here, the defendant’s initial statements that he’d had one beer, then that he’d had two or three, were made at the scene and prior to his being placed under arrest. He had not been handcuffed or restrained, and the detention and inquiry were brief. Applying the test for determining custody (what a reasonable person, innocent of a crime, would have thought under the circumstances) it must be held here that the officer’s questioning at the scene was not custodial in nature. (People v Yukl, 25 NY2d 585 [1969]; People v Bailey, 140 AD2d 356 [2d Dept 1988].) The motion to suppress these statements is denied.
Defendant’s station house statements, made in response to questions from the PD 244 form, were clearly the result of custodial interrogation, and were properly preceded by Miranda warnings. However, at the hearing Officer Morelia could not remember whether the defendant had requested an attorney prior to answering these questions. A suspect in custody who requests an attorney cannot be said to have waived that right and to have made a voluntary statement in the absence of counsel. (People v Bing, 76 NY2d 331, 339 [1990].) Inasmuch as it is not known whether defendant requested counsel here, and considering that the People have the burden of proving the voluntariness of defendant’s statement beyond a reasonable doubt (People v Huntley, 15 NY2d 72, 78 [1965]), defendant’s motion to suppress his postarrest statements is granted.
Therefore, the defendant’s Dunaway motion is denied and the Huntley motion is granted in part and denied in part as stated above.