OPINION OF THE COURT
Herbert Kramer, J.
The novel question presented on this motion to suppress is whether the seizure of the defendant, a bystander to an *558 ongoing arrest, is constitutionally permissible in the absence of probable cause, a subject of "scant appellate authority”. (People v De Bour, 40 NY2d 210, 219.)
We find, as a matter of law, that a seizure was effected in this case. However, by virtue of the attendant circumstances described below, it was justified and not unreasonable. Accordingly, defendant’s constitutional rights were not contravened and his motion is denied.
Although the People must go forward initially to show the legality and reasonableness of the police conduct, the defendant must bear the ultimate burden of proof. (People v Chestnut, 43 AD2d 260, affd 36 NY2d 971; People v Di Stefano, 38 NY2d 640.)
I find that the People met their burden of going forward which was not overcome by the defendant.
A hearing was held before me on January 11 and January 14, 1980. Testimony was elicited from Police Officer Anthony Celano, Shield No. 4037, 76th Precinct, Benny Sinatra, and the defendant, Angelo Natoli.
I find the testimony of Officer Celano to be credible in most details, and make the following findings of fact:
On September 22, 1979 at about 2:00 a.m., three police officers in civilian dress were riding in an unmarked police vehicle along Union Street in Brooklyn. They proceeded down the block, comprised of abandoned stores, a few residential buildings, and sighted a lone parked car. Upon closer scrutiny, the police officers identified the front seat passenger as Benny Sinatra, a fugitive. They exited their automobile to arrest this locally famous Mr. Sinatra. The front door of 104 Union Street opened, some six to eight feet from curbside. The defendant emerged from his home holding keys in his hand. The police, in the midst of an ongoing arrest, with guns previously drawn, perceived the defendant at the doorway, advancing toward the car. Officer Celano shouted, "Police”, and started to approach the defendant. Natoli exclaimed, "Oh [unintelligible]”, and, turning away from the view of the officers, began fumbling with his keys at the door from which he had just exited. The police officer shouted again, "Police — turn around.” Natoli did not turn around, prompting Officer Celano to repeat, "Police — turn around.” Officer Joe Favor then began to approach the defendant from behind. The defendant’s right shoulder was facing Officer Celano at this *559 time; his left shoulder faced the door. Because of this position, the officer testified, "I didn’t like the way he was standing in position to me. I felt there was a possible hazard with his shoulder to me. I wanted to be able to look at him.” As Officer Favor approached the defendant from behind, the defendant turned. Officer Celano testified that he saw a revolver on defendant’s left hip, handle facing front. He patted down the defendant, grabbed the revolver, the subject of the instant motion to suppress, and said to his partner, "Joe, he has a gun.” Officer Celano took the gun, and defendant was placed under arrest by Officer Favor.
CONCLUSIONS OF LAW
Normally, probable cause must exist before a search or seizure is effected, but for the narrow exception of common-law inquiry and/or a limited pat-down for weapons. These exceptions arise where reasonable inferences from known facts give rise to a reasonable belief in the mind of the police officer that his safety, or the safety of others is in danger. (Terry v Ohio, 392 US 1; People v De Bour, 40 NY2d 210, supra; People v Cantor, 36 NY2d 106; Dunaway v New York, 442 US 200; CPL 140.50.)
The case at bar presents a unique situation wherein probable cause to arrest for a crime prior to the initial police approach certainly was lacking, nor was there reason to believe the defendant was either engaged in or bordering on criminal activity. Defendant’s original appearance on the scene was "a circumstance neutral of itself,” which, "upon becoming part of the gathering whole may, as here, take on important significance.” (United States v Foster, 584 F2d 997, 1001.)
However, the inquiry does not end there. Effecting an arrest heightens the affirmative duty of police to protect the welfare of bystanders, to safeguard against interference by third parties, intentional or innocent, and finally, to insure personal safety.
Because street encounters between the police and private citizens are so varied in their permutations, reasonable police action, of necessity, is based upon an on-the-spot evaluation of the exigencies and interests presented by the facts in each particular case. (United States v Foster, supra; United States v Wylie, 569 F2d 62, 66.) In the case at bar, the police officers were confronted with a critical situation wherein it was most *560 reasonable to act with a measure of caution to insure the safety of any passersby, in addition to their own. Whenever any arrest is made, police officers historically must be prepared to face the unexpected. A street arrest of a known fugitive portends the possibility of resistance from any direction. I find, as a matter of law, that when the defendant happened upon the scene, it was reasonable for Officer Celano to infer some connection, intrusion or merger of what at that point were singular events. Was defendant going to enter the Sinatra vehicle? If so, with what effect? Consider the lone parked car, the hour, the passenger, an unoccupied driver’s seat, the defendant emerging, the doorway immediately adjacent, and the keys held in hand. The officer could have reasonably concluded that defendant: (1) was an innocent bystander about to enter an area of danger, or (2) an intruder about to interfere with an ongoing arrest, or (3) posed a threat to his and his fellow officers’ safety. All of these could give rise to a right, if not an obligation of further inquiry. "A brief stop * * * to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.” (Adams v Williams, 407 US 143, 146.)
Accordingly, Officer Celano commanded that defendant turn around to face him, and evoking no response from the defendant, repeated his command, again inspiring no co-operation from defendant. The officer approached the defendant, as did Officer Favor, whose gun was drawn. We find that defendant’s detention by these officers was tantamount to a full seizure because Officer Favor’s gun was drawn at all times and also because of the language employed by Officer Celano. (People v Wynn, 54 AD2d 366.) To hold that the officer should have reholstered his gun upon his approach to defendant would place an unreasonable burden on the officer and thereby dangerously delay the swift action required of him at that moment. The nonresponse to the instruction, "Turn around” escalated a valid concern for personal safety and justified a pat-down and the subsequent search.
This court is constrained to conclude that there may be times when, as here, due to an unusual web of outside circumstances, police action becomes a full seizure in pursuit of a mere common-law inquiry. This seizure with a drawn gun is sustainable, based originally on the officer’s concern with a bystander intrusion, innocent or intentional, which tran *561 smuted itself into a legitimate concern for his own safety. This stop constituted a common-law inquiry because the display of force was necessarily attributable to outside factors. The pat-down and subsequent search resulting therefrom are found reasonable.
The motion to suppress is denied.