OPINION OF THE COURT
Memorandum.
Judgment of conviction of the court below (see 103 Misc 2d 557) affirmed.
The record herein indicates that on September 23, 1979 at 2:00 a.m., on a deserted street in Brooklyn, three police officers were returning to their precinct at the end of their tour of duty when they noticed a lone car parked on the street. Seated in the car, on the passenger side, was an individual whom the officers recognized as a known fugitive (one Benny Sinatra). The officers stopped their unmarked patrol car, and two of them approached the automobile in which the fugitive was seated to effect his arrest. It appears that at least one of those officers approached the vehicle with gun drawn. Contemporaneous with the com *50 mencement of the afore-mentioned arrest, the third officer (Cemano) testified that as he was leaving the patrol car, he noticed defendant emerge from the doorway of an apartment building approximately eight feet from the automobile where the arrest of the fugitive was taking place. Upon seeing the ongoing police action, defendant then uttered an expletive, turned back into the now locked doorway from which he had emerged and unsuccessfully attempted to reenter the apartment building, thereby obliterating a frontal view of his person by the officers. Officer Cemano, wearing a shield, identified himself as a police officer, approached defendant and asked defendant to “turn around”. Defendant evidently did not comply with the request and his back remained facing the officer. At this point, another officer, whose gun had apparently been drawn in connection with the arrest of the nearby fugitive, approached defendant from the rear and the request to turn around was repeated by Officer Cemano. Defendant complied and as he turned around, Officer Cemano noticed the handle of a gun protruding, in plain view, from the waistband of defendant’s pants. The gun was removed by the officer and defendant was placed under arrest.
Defendant was initially charged with criminal possession of a weapon, third degree (Penal Law, § 265.02). Following denial of defendant’s motion to suppress introduction of a gun into evidence, defendant was permitted to enter a plea of guilty to attempted criminal possession of a weapon, fourth degree (Penal Law, §§ 110.00, 265.01). Defendant was sentenced to a conditional discharge. The sole issues raised on appeal relate to the propriety of the order of the court below denying defendant’s motion to suppress.
Initially, we recognize that the facts presented by the record herein pose a novel question involving a delicate balancing of “the government’s interest in the detection and apprehension of criminals [and] the encroachment involved with respect to an individual’s right to privacy and personal security” (People v Cantor, 36 NY2d 106, 111).
In People v De Bour (40 NY2d 210, 217), the Court of Appeals observed that “any time an intrusion on the security and privacy of the individual is undertaken with *51 intent to harass or is based upon mere whim, caprice or idle curiosity, the spirit of the Constitution has been violated and the aggrieved party may invoke the exclusionary rule”. In adjudicating the merits of the instant appeal, we are also mindful that the sanctuary of calm reflection in which judicial assessment of past events takes place should not supplant a sensitivity to the reality of street encounters. We are therefore guided by the principle articulated by the Court of Appeals (supra, pp 217, 218) that “[t]he crucial factor is whether or not the police behavior can be characterized as reasonable which, in terms of accepted standards, requires a balancing of the interests involved in the police inquiry *** [U]nrealistic restrictions on the authority to approach individuals would hamper the police in the performance of their other vital tasks. This is not to say that constitutional rights to privacy and freedom from unreasonable searches and seizures must be abandoned to accommodate the public service aspect of the police function. The overriding requirement of reasonableness in any event must prevail.”
In the case at bar, Officer Cemano and his partners were effecting the arrest of a known fugitive seated in a car on a deserted street in the early morning hours. Said fugitive was in front of and about eight feet from the doorway of an apartment building from which defendant emerged, uttered an expletive and into which defendant turned back, thereby preventing the police from viewing him frontally. Given the proximity of defendant to the automobile in which the fugitive Sinatra was seated, the officers’ recognition of Sinatra as a fugitive, the commencement of Sinatra’s consequent arrest, the deserted nature of the street and the timing of defendant’s appearance, it cannot be said that Officer Cemano’s simple request that defendant “turn around” was unreasonable, particularly in light of Officer Cemano’s testimony that “I felt there was a possible hazard with his shoulder to me. I wanted to be able to look at him.” Moreover, although it appears that another officer had his gun drawn at the time, this circumstance resulted from the contemporaneous arrest of Sinatra and did not appear to be related or directed to the apprehension of defendant. The record suggests that the primary impediment to defen *52 dant’s movement was a locked door rather than actions taken by police. As in De Bour (supra), the encounter here was devoid of harassment or intimidation. It was brief, lasting only a few minutes. The officer’s requests that defendant turn around were circumscribed in scope to the officer’s task. Significantly, the encounter did not subject defendant to a loss of dignity. Moreover, the attendant circumstances were sufficient to arouse the officer’s interest. The encounter here occurred after midnight and only after defendant had conspicuously appeared at the doorway of the building adjacent to and immediately in front of the site of a known fugitive’s ongoing arrest, had uttered an expletive and had turned back into the doorway from which he had emerged. In evaluating the police action in light of the combined effect of these factors, we conclude that “rather than being whimsical it was reasonable” (People v De Bour, 40 NY2d 210, 220, supra). Therefore, the seizure of defendant’s gun, which came into plain view as he turned toward the officers, was proper. The refusal of the court below to suppress admission of the gun into evidence was correct.
In reaching the result herein, this court is not unmindful of cases decided since De Bour (notably United States v Mendenhall, 446 US 544; Dunaway v New York, 442 US 200; People v Howard, 50 NY2d 583; People v Barnes, 101 Misc 2d 76). We note, however, that these cases present factual circumstances which render them distinguishable from the case at bar and, in our view, do not attenuate the vitality of De Bour, and its applicability to the instant appeal.
Concur: Buschmann, J.P., Kirsch and Kunzeman, JJ.