■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RONALD ROBINSON, Respondent.—Order of the Supreme Court, New York County (Robert M. Haft, J.), entered on May 7, 1985, which granted defendant's motion to suppress a pistol and three statements made by him, is reversed, on the law, and the motion to suppress denied.

On August 28, 1984, Police Officers Edward De Corsia and Willis Crosland were working in plainclothes, operating a taxicab being used as an unmarked police car. Shortly after midnight, as they were leaving a store on Mulberry Street,

they observed a gray van making an inappropriately "wide" and "erratic" left-hand turn from Canal Street. After seeing the vehicle continue along at a high rate of speed, they concluded that the driver might be intoxicated. The officers got into their taxicab and drove off in the direction of the van, which they followed for approximately five minutes. They then noticed that the defendant herein, who was driving the van, activated the right-hand directional signal but instead made a left turn. The police placed a revolving red light on the roof of the taxicab and attempted to pull the van over. However, the defendant accelerated the vehicle, nearly crushing a motorcyclist in the process. It wasn't until some six blocks later, when the defendant finally came to a stop at a red light, that the officers succeeded in halting the van. Officer De Corsia went over to the driver's side while Officer Crosland proceeded to the passenger's side, where a woman was seated.

Both officers testified at the suppression hearing that they did not draw their weapons as they approached the van, although Officer De Corsia stated that he may have unholstered his gun and held it downward against his leg. At any rate, the defendant complied with the request that he step out of the van. He thereupon handed Officer De Corsia his license and registration. He did not have an insurance card and claimed that the van belonged to his wife. The license was issued in the defendant's name, but it was a torn, out-of-State temporary license. The registration had not been signed and was in the name of Johnnie M. Gibbs. Following his examination of the two documents, Officer De Corsia directed defendant to step around the van to the other side. Officer De Corsia gave various reasons for doing so—he was concerned about the oncoming traffic; he wanted the defendant to speak separately with Officer Crosland so that he could determine if the defendant's answers remained consistent; having the defendant move away from the van would enable the officer to check for weapons to ensure his own protection; and the officer also wished to check for contraband in the "grabbable areas" of the van. After the defendant had moved away, Officer De Corsia could see into the van through the open door. Shining his flashlight inside, he observed the muzzle of a .38 caliber automatic pistol under the raised driver's seat.

Following his arrest, the defendant made several statements to the police. These statements were subsequently found by the court to be voluntary, and the defendant does not challenge that ruling. Therefore, the only issue involved herein is the propriety of the police conduct surrounding the discovery

of the gun. In that regard, the trial court initially decided as a matter of fact that Officer De Corsia removed the defendant from the van, had him step around it to the curb and then returned to the driver's side of the vehicle where he found the weapon. On that basis, the court ruled that while the stop of the van, the questioning of the defendant and the request to move away from the van were all reasonable, the officer was not justified in shining his flashlight inside the vehicle. A revised decision was later filed in which the court altered its fact finding to the extent that it now determined that the officer remained at the already open door of the van after the defendant had complied with his direction to get out of the van and walk around to the curb. However, the court again concluded that the police action in shining a flashlight into the interior of the vehicle was not authorized by any suspicious criminal conduct on the part of the defendant nor due to any concern for the safety of the officers.

As the trial court correctly concluded, the police acted appropriately when they stopped the defendant's van, ordered him to exit the vehicle and step over to the pavement. The law is clear that a minimal intrusion such as the one which occurred herein is proper when the officers are engaged in an investigation into an apparent traffic violation involving an occupied car on a public street. *(People v Livigni,* 58 NY2d 894.) Since both the initial stop of the defendant's vehicle and his detention were valid, shining a flashlight into the interior of the van to illuminate what would have been in plain view in daylight did not involve an unreasonable intrusion. *(Texas v Brown,* 460 US 730, 739-740; *People v Cruz,* 34 NY2d 362; *People v Simmons,* 83 AD2d 79.) It is only where the stop itself or the ensuing detention is unwarranted that the use of a flashlight constitutes an unreasonable search. *(See, People v Milaski,* 62 NY2d 147; *People v Smith,* 42 NY2d 961.) In the instant situation, the officer did not open the door or conduct a search but, rather, discovered by the light of his flashlight the gun in plain view. Under these circumstances, the weapon and defendant's statements concerning it should not have been suppressed. Concur—Sullivan, J. P., Ross and Milonas, JJ.

Fein and Ellerin, JJ., dissent in a memorandum by Fein, J., as follows: I would affirm the order appealed from for the reasons stated by Justice Robert Haft, Supreme Court, New York County, granting defendant's motion to suppress. I would add only that the arresting officer's testimony was plainly to the effect that the purpose of the flashlight search

of the interior of the vehicle was to check for contraband in the "grabbable areas" of the van which had been stopped for traffic violations. At the time of the search the driver had been moved around to the other side of the vehicle to talk to the other officer at the direction of the arresting officer.

Hence there was no basis for any claim that the officer was looking for weapons in order to insure his safety. Nor was there any suspicious circumstance indicating the commission of a crime so as to warrant the search. *(People v Milaski,* 62 NY2d 147; *People v Smith,* 42 NY2d 961.)