OPINION OF THE COURT
Bertram Katz, J.
A passenger in an automobile which is arbitrarily stopped has the same right to be free from unwarranted interference *756 with his freedom of movement as a pedestrian, within the scope of the protections afforded under the US Constitution 4th Amendment. In the case at bar, Marino Mejia has moved for suppression of a gun taken from beneath the passenger seat of the automobile in which he was riding, and for suppression of narcotics taken from his person following arrest.
This court has rejected the People’s contention that the defendant lacked standing to contest the seizure of physical evidence, and, in the absence of an authoritative holding in the First Department on this precise issue, the reasons for the court’s determination will be explained in some length.
At the Mapp hearing held on September 19, 1986, the People’s witnesses, Police Officers Patrick Smith and Kevin McCann, testified that they were patroling in an unmarked car on February 13, 1986 in the vicinity of Thieriot and Soundview Avenues. It was 1:00 A.M., and the officers were dressed in street clothes.
Both officers had approximately three years’ experience at the time this incident took place.
Waiting at a traffic light, they noticed a new car stopped in front of them. The occupants of the car, according to the officers, "were acting in a suspicious manner” and "appeared nervous”.
The light turned green, and the car accelerated quickly, but did not exceed the speed limit.
About one-half block later, the officers turned on their dome light and pulled the car over. Officer Smith approached the driver, a certain Mr. Alvarez, and asked for his license. The driver produced a Puerto Rican license and registration.
Although he did not fear for his safety, Officer Smith opened the door on the driver’s side.
Simultaneously, Officer McCann approached on the passenger side of the car. The defendant Marino Mejia was seated on the passenger side of the front seat. Officer McCann opened up the passenger side door and shined a flashlight into the car. The beam of the flashlight revealed what appeared to be 2 Vi to 3 inches of the barrel of a firearm directly under the part of the seat where the defendant was sitting.
The driver and the defendant were ordered out of the car. Officer McCann closely examined the object under the seat, verified that it was a gun, and placed Mr. Mejia and Mr. Alvarez under arrest. He then went back to the car and recovered the gun.
*757 The defendant was taken to the 43rd Precinct and ordered to empty his pockets, resulting in the discovery of a small quantity of cocaine. The gun and narcotics were vouchered at the precinct.
Based on this record, the People have argued that the police acted reasonably in stopping the car for investigation, and that the resultant seizure of evidence was constitutionally permissible. Alternatively, the People assert that the defendant lacks standing to contest the seizure of the gun from a car in which he was a mere passenger, and that the seizure of narcotics was incident to a lawful arrest.
The primary issue is the propriety of the initial stop of the automobile in which Mr. Mejia was riding. Although there was some testimony by the officers that the new car had a type of tinted windows which made it difficult to see inside during the night hours, they nonetheless admitted that they were not "out to make arrests” for violations of the Vehicle and Traffic Law that evening.[1]
The only reason for the stop and ensuing search of the automobile, which was emphasized repeatedly by both officers, was the "suspicious” appearance of the car’s occupants, as well as their presence in an alleged "high crime area” late at night. Indeed, no mention was made of tinted windows in the police reports or in the Grand Jury testimony, nor was a ticket issued for this infraction.
Accordingly, the court accepts the officers’ candid admissions that they stopped the automobile solely because of their suspicion that the occupants were, in the officers’ view, acting in a manner indicative of criminality, not for any violation of the Vehicle and Traffic Law. The reference to tinted windows must be seen as a bootstrap rationalization, a modest and halfhearted attempt at best to tailor evidence to meet constitutional objections, when viewed in conjunction with the candid totality of the officers’ testimony. It is nevertheless a tailoring attempt, and will be treated as such by this court. (See, People v Guzman, 116 AD2d 528, citing People v Quinones, 61 AD2d 765, 766.)
It is settled law that an investigative stop of an automobile constitutes an impermissible seizure in the absence of at least *758 a reasonable suspicion that the occupants of the vehicle have, or are about to be, engaged in conduct in violation of law, including traffic violations. (See, People v Rosario, 94 AD2d 329, 332; People v Ingle, 36 NY2d 413; People v Sobotker, 43 NY2d 559.)
Although these two officers of modest experience were, in the court’s view, acting in good faith founded on a "hunch”, an automobile stop may not be based solely on whim or caprice, but must be based on credible indicia of criminality. (People v Cantor, 36 NY2d 106; People v Sobotker, supra.) There was simply no activity upon which to base the stop of the automobile; no specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the intrusion. (People v Sobotker, 43 NY2d 559, 563, supra; Terry v Ohio, 392 US 1, 21; People v Ingle, 36 NY2d 413, 420, supra.)
Having determined that the car stop was unconstitutional, the court will now turn to the People’s alternative arguments. On authority of People v Miller (43 NY2d 789, affg on opn below 52 AD2d 425) the People assert that Officer McCann’s use of a flashlight to discover a gun "in plain view” was not a search within the meaning of the 4th Amendment. (See also, People v Gilbert, 115 AD2d 303; Texas v Brown, 460 US 730, 739-740.)
However, the Miller holding (supra) was predicated upon the fact that the initial stop of the automobile was reasonable. Where there is an arbitrary stop of an automobile culminating in a flashlight search, as in this case, the Court of Appeals has clearly held that the 4th Amendment is indeed implicated, and the plain view doctrine does not serve to validate the search. (People v Smith, 42 NY2d 961, cited in People v Price, 54 NY2d 557, 563, n 3; see, People v Robinson, 115 AD2d 411 [1st Dept 1985].) The use of a flashlight in this case, which revealed a gun under the front seat, was a direct result of the arbitrary stop of the automobile, and must be adjudged an illegal search and seizure within the purview of the 4th Amendment.
The prosecution also relies on People v David L. (56 NY2d 698, revg on dissent at 81 AD2d 893, 895, cert denied 459 US 866) which held by a narrow 4 to 3 majority that a passenger in an automobile lacked standing to contest an investigative stop which resulted in the discovery of a gun in his waistband. In David L. it was found that the automobile in question was *759 stopped because it was making excessive noise and had a defective rear light. While one police officer questioned the driver, another officer approached the defendant, who was seated in the front passenger seat.
Suddenly, the officer opened the front passenger door, causing the passenger to slide away from the open door, revealing to the officer a gun in plain view in the passenger’s waistband. The court held, after emphasizing that the car was lawfully stopped, that opening the front door of the car in this case was a sensible precaution by the police (Pennsylvania v Mimms, 434 US 106), and that the defendant lacked standing to contest the legality of the minimal act of opening the door of a car in which he was merely a passenger.
Once again, the chief distinction is that the car was legally stopped prior to the opening of the door. Accordingly, the court finds that the narrow holding of David L. (supra) is of no aid to the People’s position in the case at bar.
Finally, the People have argued that a passenger in an automobile has no standing to contest an arbitrary stop of an automobile or the search of its interior. As in the seminal case of Rakas v Illinois (439 US 128, reh denied 439 US 1122), Mr. Mejia has not made any showing that he had an expectation of privacy in the area searched or the item seized. Unlike the defendant in Rakas, however, Mr. Mejia specifically contests the validity of the initial stop of the automobile as an arbitrary interference with his freedom of movement, a stop which this court has already held does not pass constitutional muster.
The significance of this distinction was touched upon, albeit in dicta, in a Second Department case, People v Smith (106 AD2d 525 [2d Dept 1984]). The Smith court found that a passenger in an automobile did indeed have standing to challenge the stop, noting that this principle was accepted by a 6 to 3 majority of the Rakas court (supra) (i.e., the dissenting and concurring Justices) and by the authoritative treatise authored by Professors LaFave and Israel (1 LaFave & Israel, Criminal Procedure § 9.1, at 726).
Although a contrary holding is urged on this court by the People, special note must also be taken of a significant and recent First Department holding, People v Millan (118 AD2d 236 [1st Dept 1986]). Millan involved a stop of a gypsy cab, allegedly for going through a red light. In a 3 to 2 decision, it was held that a passenger lacked standing to contest the *760 seizure of a gun found inside a zippered bag on the front car seat, based in part on the diminished expectation of privacy generally associated with automobiles, particularly taxicabs for hire. (See, United States v Martinez-Fuerte, 428 US 543, 561; Cardwell v Lewis, 417 US 583, 590.)
The majority nevertheless noted the limited judicial recognition[2] accorded the principle that a passenger in an automobile may contest the initial stop of the automobile, but held this principle inapplicable to the defendant. The lower court had found credible the officers’ contention that the taxicab had gone through a red light, thereby legitimizing the stop. (People v Ingle, supra.) This testimony was the chief object of contention at the suppression hearing. The dissent by Justice Carro noted with dismay the increasing frequency with which such allegedly tailored testimony was being used to support arrests in gypsy cab cases, a police procedure he termed a "modus operandi”.
The majority, however, found no such "modus operandi” on the part of the police, and held that each case must be considered on its own merits. What was important was that the lower court record established that there was an articulable and credible reason for stopping the cab.
Significantly, it was also held that the defendant had failed to attack the propriety of the stop on procedural grounds, i.e., his moving papers were factually insufficient by the standards of CPL 710.20 and 710.60 to merit a hearing on the issue.
The dissent discounted the officers’ "patently tailored” account of the red light, and conferred standing on the defendant to contest the stop. The evidence seized as a result of the stop was suppressible as "fruit of the poisonous tree”. (Wong Sun v United States, 371 US 471, 484-486.)
Given the strenuous efforts of the Millan majority (supra) to avoid reaching the standing issue, and in view of the persuasively crafted nature of the dissent, this court is obligated to recognize the standing interest of a passenger in an arbitrarily stopped automobile. There is no rational basis for denying automobile passengers the same 4th Amendment protections against arbitrary interference that have been granted to *761 pedestrians. Put another way, there is no compelling reason to believe that a person who steps into the confines of an automobile is, by this modest act, making a blanket waiver of his constitutional right against arbitrary interference with his personal freedom of movement. A contrary holding would reward bad faith on the part of the police, and vitiate the purposes of the exclusionary rule. (See, Rakas v Illinois, 439 US 128, 156 [dissent], supra.) The implications of such a holding for a free society, and for the cherished right to be free from unwarranted governmental intrusion, are unacceptable.
The court finds that the stop of the automobile was an unconstitutional seizure of its occupants, which the defendant has standing to contest. The seizure of physical evidence was the fruit of this impermissible police conduct. The seizure of the gun was the direct result of the unlawful stop of this automobile, and the seizure of the narcotics flowed directly from the illegal search of the automobile and subsequent invalid arrest of the defendant. (Wong Sun v United States, supra.)
It follows that the defendant’s motion to suppress physical evidence is granted in all respects.

. Operating a vehicle with excessively tinted windows, or "mirror” windows, is a violation of Vehicle and Traffic Law § 375 (12-a), but normally tinted windows, which are frequently seen on new cars, are of course not prohibited by the Vehicle and Traffic Law.

. Nisi prius cases on point include People v Jones, 125 Misc 2d 91; People v Moore, 126 Misc 2d 482; People v Castro, 125 Misc 2d 15; People v Green, 121 Misc 2d 522; People v Aquirre, 111 Misc 2d 586; contra, People v Judge, 117 Misc 2d 912; People v Ocampo, 129 Misc 2d 217; see also, People v Wade, 122 Misc 2d 50.