■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNETH BALDANZA, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Gallagher, J.), rendered June 8, 1987, convicting him of attempted criminal possession of a controlled substance in the fourth degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

On May 10, 1986, at approximately 4:48 A.M., Officer Jahn and his partner, assigned to the Queens Auto Larceny Unit, were on patrol in the vicinity of the Bayside Marina, which is located on the service road running parallel to the Cross

Island Parkway. Officer Jahn observed a gold, 1984 Chevrolet Corvette, bearing Florida license plates, parked in the marina lot, facing toward the water. The individual seated in the driver's seat, identified as the defendant, was slumped over the wheel with his head down, apparently asleep or unconscious. The parking lot was nearly dark; the only illumination came from lights along the parkway. There was only one other vehicle in the lot, parked approximately four car lengths away from the Corvette. On the mobile computer terminal inside the radio car, Officer Jahn ran a computer check on the license plates of the gold Chevrolet and discovered that there was no record of the plates on file with the Florida Department of Motor Vehicles. Clearly, at this point, the police officers had good reason to suspect that criminal activity was afoot and, thus, could exercise their common-law right to inquire, which permits an officer to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure (see, People v De Bour, 40 NY2d 210; People v Miller, 52 AD2d 425, affd 43 NY2d 789).

Officer Jahn next approached the Corvette from the passenger's side, while his partner approached the driver's side of the vehicle. Jahn shined his flashlight through the passenger's side window and observed a plastic zip lock bag, which contained a white substance, protruding between the passenger seat and the center console. Officer Jahn then walked around to the driver's side of the vehicle, opened the door and instructed the defendant, who was now awake, to exit the vehicle. As the defendant was stepping out of the vehicle, Officer Jahn shined his flashlight into the car's interior and observed two plastic zip lock bags, also containing a white substance, on the floor of the driver's side of the vehicle. The officer frisked the defendant and asked for his license and registration, which the defendant produced. After placing the defendant in handcuffs, Officer Jahn recovered the zip lock bags from the floor on the driver's side of the vehicle and the bag between the console and the passenger's seat. Officer Jahn, a 4½-year police veteran, had effected or assisted in 25 narcotics related arrests and was familiar with how narcotics, including cocaine, were packaged from his police training and duties.

Both Federal and State decisional law permit seizure of articles which come into an officer's plain view from a lawfully obtained vantage point (see, Coolidge v New Hampshire, 403 US 443, 466, reh denied 404 US 874; People v Thomas, 125 AD2d 895, 897). Since the officers approached the Corvette in

the exercise of their common-law right of inquiry, which was not predicated upon a mere hunch *(cf., People v Smith,* 42 NY2d 961), Officer Jahn's use of a flashlight to illuminate the interior of the car does not constitute an unreasonable intrusion *(see, People v Cruz,* 34 NY2d 362, *rearg granted and decision amended* 35 NY2d 708; *People v Miller, supra; People v Howell,* 78 Misc 2d 538, *affd* 51 AD2d 1105). With the aid of a flashlight, Officer Jahn observed, in plain view, most of a clear plastic zip lock envelope containing a white powder, which, based on his training and experience, he believed to be cocaine. Contrary to the defendant's contention, there is authority indicating that the viewing of a glassine envelope on a floor of a car by a police officer, trained and experienced in the field of narcotics, constitutes probable cause to arrest the defendant and seize the contraband *(see, People v Cox,* 28 NY2d 752; *People v Rowell,* 27 NY2d 691; *People v McRay,* 51 NY2d 594). Here, a finding that Officer Jahn reasonably believed that the plastic zip lock envelope—packaging characterized as the "hallmark" of drug transactions *(see, People v McRay, supra)*—contained illicit narcotics rather than an innocuous substance is bolstered by the presence at 4:38 A.M. of the defendant, slumped over the wheel of a Corvette in an isolated location, well suited for the covert use of illegal drugs *(see, People v Balas,* 104 AD2d 1039; *People v Greenridge,* 131 AD2d 303; *People v Piazza,* 121 AD2d 573, *lv denied* 68 NY2d 916). These circumstances sufficed to establish probable cause to arrest the defendant *(see also, People v Thomas, supra)*.

We also reject the defendant's contention that Officer Jahn's testimony at the suppression hearing was incredible as a matter of law and patently tailored to overcome constitutional objections *(cf., People v Quinones,* 61 AD2d 765; *People v Garafolo,* 44 AD2d 86). Officer Jahn's testimony did not properly lay a foundation for proving that a photograph proffered by defense counsel accurately represented the Corvette on the date of his arrest. The picture was of a 1984 gold Corvette with tinted windows. However, Officer Jahn testified that he didn't think the windows of the Corvette were tinted on May 10, 1986, and that that was a detail he would have remembered had such windows been present. In his opinion, tinted glass was substituted during the three-month period between the date of the arrest and the date of the suppression hearing. The defendant did not testify at the hearing, and he did not produce a witness to establish that the subject Corvette had tinted windows on May 10, 1986. Consequently, the defendant, who has the burden of proving illegality *(People v Quinones,*

*supra),* did not establish that the officer's view of the plastic zip lock bags protruding between the passenger seat and console was obstructed by tinted windows. Bracken, J. P., Lawrence, Rubin and Kooper, JJ., concur.