OPINION OF THE COURT
Steven W. Fisher, J.
The primary question on this motion to suppress is whether the police may conduct a purposeful visual search of the interior of an occupied automobile without cause. The issue involves the plain view exception to the Fourth Amendment’s *617 warrant requirement and whether New York law has been affected by the Supreme Court’s recent holding in Horton v California (496 US —, 110 S Ct 2301, 110 L Ed 2d 112) which eliminated the element of inadvertence from the Federal law of plain view.
The facts here are largely undisputed.
On the afternoon of December 13,1989, Police Officer James Murphy of the 108th Precinct’s Street Narcotics Enforcement Unit was manning an observation post on the rooftop of 50-04 46th Street in Queens County. An experienced narcotics officer, Murphy was assigned to monitor drug activity along 46th Street between 48th and 50th Avenues, a known drug-prone area.
Across the street from the observation post was a privately owned apartment building. Entry to the building was through a 25-foot-long archway which led from the street to an open-air courtyard. At each corner of the courtyard, a locked door controlled by a buzzer system provided access to the apartments. "No trespassing” signs were posted in the archway.
Although Murphy was familiar with the layout of the building, his view from the observation post extended only a few feet into the archway. He could not see the courtyard within.
At approximately 2:30 p.m., Murphy was watching the street through binoculars when he saw the defendant walking northbound on 46th Street from 50th Avenue. In front of the building across the street, the defendant stopped and engaged in a brief conversation with a Hispanic man. The two then entered the archway and disappeared from the officer’s view.
Some two minutes later, Murphy saw the defendant emerge from the archway alone and begin walking southbound on 46th Street toward 50th Avenue. When the defendant reached the north side of 50th Avenue between 46th and 47th Streets, he used a key to enter a parked Ford automobile.
At the suppression hearing, Officer Murphy candidly testified that he had not observed any transaction between the two men and did not know whether either of them had any legitimate connection with the building. Nevertheless, in three separate radio transmissions, Murphy alerted his field team to what he had seen, describing the defendant and the car he had entered.
Officer Brian Smith, a member of the field team, received Murphy’s transmissions. Working in uniform, Smith re *618 sponded by immediately driving his marked radio car around a corner and up to the defendant’s vehicle. The officer exited the radio car and approached the passenger side of the defendant’s automobile.
Standing at its passenger window, Officer Smith saw the defendant, seated in the driver’s seat, leaning over toward the passenger side. When the defendant sat up, the officer looked at the floor of the vehicle near the console on the passenger side and saw six hypodermic needles and a tinfoil packet which he believed to contain cocaine.
The officer walked around to the driver’s side, ordered the defendant out of the vehicle, and placed him under arrest. He then seized the contraband which the defendant now moves to suppress.
At the outset, it seems plain that nothing observed by Officer Murphy justified any police action against the defendant. The officer saw no drugs or money exchanged; he overheard no incriminating conversation. There is no evidence that the officer had ever seen the defendant or the Hispanic man before, or knew anything about them. He articulated no reason to believe that they were engaged in other than innocent conversation or that they had entered the premises for other than a legitimate purpose.
Moreover, there is no evidence to suggest that the conduct of the two men fit any pattern of activity associated with previously observed drug transactions at the location.
The fact that the general area was known to be drug prone is without consequence under the circumstances here. The right to be free of unwarranted police interference is not diminished solely because citizens, engaged in entirely innocuous activity, do so in a neighborhood which suffers from a high rate of crime (see, e.g., People v Johnson, 64 NY2d 617, 618-619; People v Boulware, 130 AD2d 370, 373 [1st Dept]; People v Cornelius, 113 AD2d 666, 671 [1st Dept]; People v Allen, 124 AD2d 1046, 1047 [4th Dept]; cf., People v Bronston, 68 NY2d 880).
On the evidence presented, all that can be said here is that Officer Murphy, an experienced policeman, apparently had a hunch about what he had seen. That his hunch may have proved correct is irrelevant for Fourth Amendment purposes, for a hunch or vague suspicion without more will justify virtually no interference with a citizen’s liberty (see, e.g., People v Finlayson, 76 AD2d 670, 675, cert denied 450 US 931; cf., People v Sobotker, 43 NY2d 559, 564).
*619 The People do not seriously contend to the contrary. They do maintain, however, that there was no unjustified interference with the defendant’s liberty because the police took no action against him until after Officer Smith observed contraband on the floor of the defendant’s vehicle. The People argue that, because Smith’s observation was made from a position he was entitled to occupy, viz., standing on a public street, and because the needles and packet, immediately recognizable as contraband, were in plain view from that vantage point, the officer was entitled to seize the items and to arrest the defendant for their possession.
The defendant responds that, in looking into the car, Officer Smith was acting purposefully, with the intent to search for contraband and the expectation of finding it. Thus, the defendant maintains, the plain view exception cannot be invoked because the officer’s discovery of the needles and the packet of cocaine on the floor of the vehicle was not inadvertent.
The People discount that argument, inter alia, on the ground that Horton v California (496 US —, 110 S Ct 2301, 110 L Ed 2d 112, supra) has eliminated inadvertence as an element of the plain view exception.
The Supreme Court has long held that evidence may be lawfully seized if it falls in the plain view of an officer who has the right to be in the position to make the observation (see, e.g., Hester v United States, 265 US 57; United States v Lee, 274 US 559; Ker v California, 374 US 23, 42-43; Harris v United States, 390 US 234, 236). But it was not until Coolidge v New Hampshire (403 US 443, reh denied 404 US 874) that the court delineated the precise contours of what has come to be known as the plain view exception.
The Coolidge court held that the exception would apply only where police officers, having a prior justification for an intrusion, inadvertently come across a piece of evidence which they immediately recognize as incriminating to the accused. In emphasizing the element of inadvertence, the court wrote that the plain view exception would not apply "where the discovery [of the evidence] is anticipated, [or] where the police know in advance the location of the evidence and intend to seize it” (403 US, at 470, supra).
Although the portion of the Coolidge opinion (supra) dealing with the plain view exception did not command a majority of the court, the courts of 46 States and the District of Columbia and 12 Federal Courts of Appeal subsequently adopted the *620 requirement of inadvertence in their holdings on plain view.[1] Among them was our own Court of Appeals (see, People v Jackson, 41 NY2d 146, 150).
Nevertheless, in Horton v California (496 US —, 110 S Ct 2301, 110 L Ed 2d 112, supra), the Supreme Court reexamined the plain view exception and, on the question of inadvertence, came to precisely the opposite conclusion from the one it had reached in Coolidge (supra).
The court predicated its analysis on the difference between searches and seizures. The court explained: "The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures. A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property. * * * If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy.” (496 US, at —, 110 S Ct, at 2306, supra.)
The court noted that Fourth Amendment privacy considerations require that the permissible scope of any search be limited by the terms of the warrant authorizing it or the character of the exception allowing it. Those considerations, the court reasoned, would be adequately served if the lawfulness of the seizure of plain view evidence turned not on whether the officers expected to find it but on whether they exceeded the permissible scope of a search in doing so. Thus, the court concluded, inadvertence was essentially irrelevant to the protection of Fourth Amendment interests.
The court then redefined the elements of the plain view exception: "It is * * * an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view, its incriminating character must also be 'immediately apparent.’ * * * Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself’ (496 US, at —, 110 S Ct, at 2308, supra).
*621 Evaluated strictly under these standards, the seizure in this case must be judged proper. Officer Smith did not violate the Fourth Amendment in arriving at the place, viz., the public street alongside the defendant’s car, from which the needles and the packet could be plainly viewed. It was immediately apparent to him that those items were contraband, incriminating to the defendant who was the sole occupant of the vehicle. And, seeing contraband inside the car, the officer had the lawful right of access to it since he was entitled to enter the vehicle to seize it (see, e.g., People v Langen, 60 NY2d 170, cert denied 465 US 1028).
This analysis, however, does not seem fully consonant with the protections afforded by New York, and even by Federal, precedents.
The Horton formulation seems to suggest that, in the plain view context, a Fourth Amendment violation can occur only in the way the officer gets to the position from which the observation is made or in the way the officer gains access to the evidence plainly viewed. Thus, the court appears to look only to physical intrusions, discounting the possibility that a lawfully positioned officer may nevertheless invade privacy through the observation itself. In that respect, the Horton framework seems incomplete.
At least since Katz v United States (389 US 347), Fourth Amendment violations have been held not to be dependent upon a physical trespass. Thus, it has been held that an observation may unlawfully invade privacy even where the observer does not (see, e.g., United States v Taborda, 635 F2d 131 [2d Cir] [results of surveillance suppressed where officers, from positions they lawfully occupied, used a telescope to spy into the home of a suspect]).
The true difficulty here may arise because of the different ways the courts define the term "inadvertence”.
As used in both Coolidge (supra) and Horton (supra), inadvertence refers to the unanticipated discovery of a particular piece of evidence in the course of a lawful search. Elsewhere, however, the term has been used to describe, not an unanticipated discovery, but an unplanned observation (see, e.g., People v Rose, 125 AD2d 727, 729 [2d Dept]).
It is clear that an officer on foot patrol who sees contraband when glancing "inadvertently” into an open first-floor window does not violate the Fourth Amendment. But does Horton (supra) mean that the same is true of an officer who, having *622 no reason to believe that contraband is present in any particular apartment, nevertheless peers into every first-floor window he or she passes, looking under or through blinds or curtains, in an attempt to see whether any illegal activity is occurring within? And, if so, will our Court of Appeals reach the same result under New York law?[2]
In the case at bar, of course, we are dealing not with a home but with an automobile and, admittedly, it has long been held that one does not enjoy the same expectation of privacy in a vehicle as in a home (see, e.g., Cardwell v Lewis, 417 US 583, 590; People v David L., 56 NY2d 698, revg 81 AD2d 893 for reasons stated in dissenting mem of Hopkins and Weinstein, JJ., cert denied 459 US 866). Nevertheless, "[t]he word 'automobile’ is not a talisman in whose presence the Fourth Amendment fades away and disappears” (Coolidge v New Hampshire, 403 US 443, 461-462, supra). Thus, the Supreme Court has recognized that, notwithstanding a diminished expectation of privacy, the interior of an occupied automobile is not without protection against unreasonable police intrusions (see, New York v Class, 475 US 106, 114-115).
Again, it seems clear that an officer who sees contraband when glancing "inadvertently” into a vehicle does not violate the Fourth Amendment. But may officers, with no reason for doing so, purposefully approach an occupied vehicle at an intersection and peer into its interior as the driver waits for a traffic signal to turn green?
Whatever the answer may now be under Federal constitutional law, it is difficult to believe that such police conduct would be sanctioned in New York, for as now Chief Judge Wachtler wrote for our Court of Appeals in the landmark case of People v De Bour (40 NY2d 210, 217): "The basic purpose of the constitutional protections against unlawful searches and seizures is to safeguard the privacy and security of each and every person against all arbitrary intrusions by government. Therefore, any time an intrusion on the security and privacy of the individual is undertaken * * * based upon mere whim, caprice or idle curiosity, the spirit of the Constitution has been violated and the aggrieved party may invoke the exclusionary rule”.
*623 In my view, a purposeful, visual search of the interior of an occupied vehicle is an intrusion upon the privacy of its occupants, albeit a minimal one, and as such requires some justification (cf., People v Smith, 42 NY2d 961, 962; People v Cruz, 34 NY2d 362, 370, rearg granted and opn amended 35 NY2d 708; People v Pacifico, 95 AD2d 215, 218 [1st Dept]). In De Bour (supra), it was held that even the minimal intrusion involved in a police officer’s approaching a citizen to request information requires "some objective credible reason for that interference not necessarily indicative of criminality” (40 NY2d, at 223, supra). No less should be required when an officer intrudes upon the privacy of a driver by peering into his or her vehicle to conduct a visual search of its interior (cf., People v Alexander, 156 AD2d 968 [4th Dept]).
Significantly, in virtually every case in which a New York Court has employed the plain view exception to uphold the discovery and seizure of contraband inside an occupied automobile, there was some articulable objective reason for police interest in the particular vehicle (see, e.g., People v Class, 63 NY2d 491, 494, revd 475 US 106, on remand 67 NY2d 431 [car with cracked windshield stopped for speeding]; People v Cruz, 34 NY2d 362, supra [stationary car blocking traffic]; People v Hawkins, 161 AD2d 802 [2d Dept] [car stopped because license plate matched vehicle used by robbery suspect]; People v Pena, 158 AD2d 480 [2d Dept] [car stopped for traffic violation]; People v Byrd, 156 AD2d 374 [2d Dept] [vehicle stopped because it matched description of one used in robbery]; People v Contino, 153 AD2d 948 [2d Dept] [car stopped upon complaint of off-duty policeman]; People v Argentina, 150 AD2d 703 [2d Dept] [car lawfully stopped for speeding]; People v Ricciardi, 149 AD2d 742 [2d Dept] [traffic stop of apparently drunk driver]; People v Hill, 148 AD2d 546 [2d Dept] [car parked at 1:00 a.m. at roadside telephone in area known for high incidence of criminal activity]; People v Baldanza, 138 AD2d 722 [2d Dept] [driver slumped over steering wheel in car with Florida license plates in a dark marina parking lot]; People v Allah, 131 AD2d 765 [2d Dept] [officers looking for VIN plate after car stopped for traffic infraction]; People v Thomas, 125 AD2d 895 [3d Dept] [car stopped because license plate did not match vehicle]; People v Mathis, 118 AD2d 594 [2d Dept] [car stopped upon reasonable suspicion]; People v Robinson, 115 AD2d 411 [1st Dept] [car stopped for a series of traffic infractions]; People v Vasquez, 106 AD2d 327 [1st Dept] [car stopped for having dangling license plate and subsequent *624 confusion over ownership of the vehicle]; People v Rosario, 94 AD2d 329 [2d Dept, Mangano, J.] [car stopped upon reasonable suspicion]; People v Livigni, 88 AD2d 386 [2d Dept, Mangano, J.], affd 58 NY2d 894 [valid traffic stop]; People v Simmons, 83 AD2d 79 [1st Dept] [passengers seen bending down in vehicle stopped for running red light]; People v Duncan, 75 AD2d 823 [2d Dept] [driver slouched over steering wheel of double parked vehicle at 3:00 a.m.]; People v Miller, 52 AD2d 425 [1st Dept], affd 43 NY2d 789 ["unusual activity” of people congregating around an occupied parked vehicle]; cf, People v Jackson, 41 NY2d 146, supra [police look through open door into room of defendant who was being sought as "prime suspect” in robbery]; see also, People v Vadnos, 130 AD2d 528 [2d Dept]; People v Maltese, 149 AD2d 626 [2d Dept]; People v Alberti, 111 AD2d 860 [2d Dept]).
In contrast, in cases in which visual searches of occupied automobiles were not supported by antecedent cause, New York courts have refused to employ the plain view exception to save the seizure of contraband. Thus, in People v Smith (42 NY2d 961, supra), the defendant parked and exited a rented vehicle and walked around the block. As he returned and was about to reenter the car, officers approached him and shone a flashlight into the car’s interior. They observed a gun on the floor of the vehicle, and a subsequent search of the car uncovered drugs.
The Court of Appeals ordered the contraband suppressed. The court wrote: "The use of the flashlight in the circumstances of this case which resulted in the discovery of the firearm and the drugs was an unwarranted intrusion into the interior of the vehicle. There was no basis for suspicion other than defendant’s prior presence in a rented car and his walking about the block. At best this gave the police by way of subjective 'hunch’ 'cause’ to investigate. Had it not been for the 'hunch’ the police would not have directed their attention to the interior of the car” (42 NY2d, at 962, supra; see also, People v Allende, 39 NY2d 474; People v Rose, 125 AD2d 727 [2d Dept], supra; cf., People v Milaski, 62 NY2d 149; People v Baldanza, 138 AD2d 722, 723-724 [2d Dept], supra; People v Vidal, 71 AD2d 962 [2d Dept]; People v Mejia, 133 Misc 2d 755 [Sup Ct, Bronx County, Katz, J.]).
Because I conclude that Horton v California (496 US —, 110 S Ct 2301, 110 L Ed 2d 112, supra) has not abrogated this long-standing principle of State law, I hold that a police officer in New York may not purposefully conduct a visual search of *625 the interior of an occupied automobile without some objective credible reason justifying police interest in the vehicle. Although the reason need not necessarily be indicative of criminality, it may not be the product of an intent to harass nor may it be based upon mere whim, caprice or idle curiosity (cf., People v De Bour, supra; People v Ingle, 36 NY2d 413).
In the case at bar, Officer Murphy articulated no objective credible reason whatsoever to justify even a minimal interference with the defendant (compare, e.g., People v Balanco, 158 AD2d 367 [1st Dept] [at 1:00 a.m., in drug-prone area, defendant adjusts waistband upon seeing approaching police officers]). There was, therefore, no legitimate basis for police interest in the defendant’s vehicle. Accordingly, the needles and packet, discovered as a direct result of the purposeful visual search of the interior of the defendant’s vehicle, should be suppressed and the defendant’s motion should be granted.
It is so ordered.

. For a listing of those cases across the Nation which adopted the inadvertence requirement, see the appendix to Justice Brennan’s dissent in Horton v California (496 US —, 110 S Ct 2301,110 L Ed 2d 112).

. See, e.g., People v Smith, 42 NY2d 961, 964 (Jasen, J., dissenting) ("It is true that legitimate expectations of privacy would preclude police, even standing on a public street, from shining a flashlight through the window of a private residence”); cf., Amsterdam, Perspectives On The Fourth Amendment, 58 Minn L Rev 349, 363, 402.